# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *ex rel.* KEVIN P. McDONOUGH ) | |
| ) | |
| Plaintiff-Relator, ) | |
| ) | CIVIL ACTION NO. 2:08-CV-0114 |
| v. ) | |
| ) | Judge Marbley |
| SYMPHONY DIAGNOSTIC SERVICES, ) | |
| INC. and SYMPHONY DIAGNOSTIC ) | |
| SERVICES NO.1, d/b/a MOBILEX, ) | Magistrate Judge Abel |
| U.S.A. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**<u>DEFENDANTS' MOTION TO DISMISS RELATOR'S AMENDED COMPLAINT</u>**

Symphony Diagnostic Services, Inc., and Symphony Diagnostic Services No. 1, d/b/a Mobilex U.S.A. (collectively "Mobilex" or "Defendants"), respectfully move this Court to dismiss Relator's Amended Complaint, in which the United States Government and thirteen individual states declined to intervene, because Relator fails to state a claim upon which relief can be granted under the False Claims Act and fails to plead fraud with particularity, pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a)(2) and 9(b). The legal and factual grounds supporting Mobilex's Motion to Dismiss are set forth in the accompanying Memorandum of Law.

WHEREFORE, Defendants respectfully request that the Court grant this Motion, dismiss the claims asserted against them by Relator, with prejudice, and provide Defendants with such other and further relief as this Court deems just, equitable and proper.

This 22nd day of July, 2011.

Respectfully submitted,

/s/ Robert G. Cohen
Robert G. Cohen (0041707)
Email: rcohen@keglerbrown.com
Kegler, Brown, Hill & Ritter, L.P.A.
65 E. State Street, Suite 1800
Columbus, OH 43215
(614) 462-5492 Direct dial telephone
(614) 464-2634 Facsimile

William H. Jordan (*admitted pro hac*)
Email: bill.jordan@alston.com
Wade Pearson Miller (*admitted pro hac*)
Email: wade.miller@alston.com
Alston + Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-4971
Phone: 404-881-7000
Fax: 404-881-7777

*Counsel for Defendants Symphony Diagnostic Services, Inc. and Symphony Diagnostic Services No. 1*

**MEMORANDUM IN SUPPORT**

I.     **PRELIMINARY STATEMENT**

On February 7, 2008, Relator Kevin P. McDonough ("McDonough" or "Relator") filed a complaint against his former employer Mobilex, under the *qui tam* provisions of the Federal False Claims Act ("FCA"), naming the United States and 13 individual states as potential plaintiffs. Following its investigation, on September 16, 2010, the United States declined to intervene in this action. On February 3, 2011, the 13 named states also declined to intervene. On June 3, 2011, Relator filed an amended

- 3 -

complaint ("complaint"), which is the subject of this motion, and which also alleges violations of the FCA and analogous state law claims.

As shown below, McDonough's claims against Mobilex should be dismissed. First, the complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to state any claim upon which relief can be granted.  As the basis for McDonough's complaint, McDonough alleges Mobilex, in its capacity as a supplier under Medicare, signed an agreement certifying that it will abide by the federal Anti-Kickback Statute (AKS) and the Stark law (STARK). Compl. ¶54.  Relator further alleges that Mobilex provided services to skilled nursing home facilities ("SNFs") at discounted rates and that these rates "constitute 'remuneration' as that term is used in the Anti-Kickback Act." Compl. ¶55.  Accordingly, Relator alleges that by submitting claims to the Government reflecting such remuneration, Mobilex violated AKS and STARK and, thus, violated the FCA.  Fatally, however, Relator fails to allege any sufficient details regarding the alleged remuneration, providing no facts establishing the fair market value of mobile x-ray services for any particular time period relevant to this complaint.

Second, the complaint should be dismissed under Fed. R. Civ P. 9(b).  Relators bringing a *qui tam* action under the FCA must meet certain pleading thresholds.  It is well-established in the Sixth Circuit that because the FCA intends to address allegations of fraud, a relator must address the enhanced pleading requirements of Fed. R. Civ P. 9(b).  *United States ex rel. Bledsoe v. Cmty Health Sys., Inc.,* 501 F.3d 493 (6th Cir. 2007).  In doing so, a relator's complaint must allege facts that identify particular examples of claims submitted to the Government for payment. *Id.*  In this case,

McDonough does not set forth the particularities of a single claim that was submitted to and paid by the Government in violation of the FCA.

Finally, Relator alleges that Mobilex unlawfully terminated him under Section 3730(h) of the FCA. Relator is the former Director of Operations for Mobilex. He filed this complaint after being fired from Mobilex for unprofessional conduct. After termination, McDonough failed to return company property, including a company car, forcing Mobilex to file a stolen vehicle report. McDonough now alleges in his complaint that his termination from Mobilex was a result of retaliation. This claim fails because Relator has not identified a plausible FCA violation, an element necessary to establish any "protected activity." Even if the Court finds that McDonough engaged in "protected activity" under the statute, he cannot establish that Mobilex was on notice that he was furthering an investigation of fraud or a *qui tam* action.

## II. BACKGROUND AND COMPLAINT ALLEGATIONS

This is a *qui tam* action brought by McDonough pursuant to the FCA, 31 U.S.C. §§ 3279 *et seq.* and similar state law provisions. Mobilex specializes in providing portable x-ray services to in-patient facilities across the United States. As a large part of Mobilex's business, it contracts with SNFs to provide services to patients covered by Medicare Part A, Medicare Part B or both. For patients covered under Medicare Part A, Mobilex bills SNFs for the services it provides and the SNFs pay Mobilex for these services. In turn, SNFs submit claims for payments to Medicare. For patients covered under Medicare Part A, SNFs are reimbursed by Medicare at a *per diem* rate. At the end of each year, SNFs also submit annual cost reports. These reports are used by Medicare to determine whether a provider is entitled to more reimbursement than already received

through interim payments or whether the provider has been overpaid. Compl. ¶ 32. Services provided for patients covered under Medicare Part B are reimbursed at the Medicare allowable rate. Mobilex bills Medicare directly for these services.

Relator alleges, by formulaic recitation, that Mobilex engages in a "swapping scheme" with SNFs by providing reduced rates for portable x-ray services for Medicare Part A patients in exchange for referrals of patients covered by Medicare Part B. Relator, however, fails to plead facts regarding the alleged remuneration in violation of AKS or STARK, and further fails to plead with particularity the facts regarding any specific claims submitted by Mobilex.

### III.  LAW AND ARGUMENT

#### A.  RELATOR'S CLAIM SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(6).

##### 1.  Relator's complaint does not meet the requirements of Fed.R.Civ.P. 12(b)(6)

This Court should dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Realtor has failed to state a claim upon which relief can be granted and has failed to satisfy the basic pleading standard of Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, the "'complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Bishop v. Lucent Techns., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005)) (affirming the dismissal of Plaintiff's complaint). Although a complaint need not contain "detailed factual allegations," it must nevertheless meet the minimum pleading requirements of Rule 8(a)(2) by "'giv[ing] the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[1]

Further, a plaintiff is "obligat[ed] to provide the grounds of his entitlement to relief [with] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Even at the pleading stage, it is still necessary to include some '"well-pleaded factual allegations'" to support the claim.  *Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. 2011).

In short, although a complaint is construed in the light most favorable to the plaintiff when the defendant files a motion to dismiss, the complaint must still contain '"enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at *4 (citing *Twombly,* 550 U.S. at 570)*; see New Albany Tractor, Inc. v. Louisville Tractor, Inc*., No. 10-5100 2011 WL 2448909 (6th Cir.  June, 21, 2011) (affirming dismissal of plaintiff's complaint).

**2. <u>Relator has failed to state a claim upon which relief may be granted because he has failed to allege sufficient facts to show illegal remuneration</u>**

In his complaint, McDonough alleges in conclusory fashion that Mobilex provides services to SNFs for Part A patients at rates that are substantially below market value, below the Medicare Fee Schedule ("MFS") and below Mobilex's costs.  Compl. ¶

---

[1] This is the general principle under Rule 8.  As discussed below, *infra*, the complaint also fails to meet the more stringent requirement of Fed R. Civ. P. 9(b), which demands that allegations of fraud be pled with particularity.

67. Relator alleges that Mobilex's reduced rates are being provided in exchange for referrals of patients covered by Medicare Part B, in violation of AKS and STARK. Relator fails to state a claim for which relief can be granted, where he fails to plead facts sufficient to establish illegal remuneration under AKS and STARK. Specifically, Relator does not plead facts to support the conclusory allegation that Mobilex's services under Part A are being provided below fair market value, below MFS or below costs.

### a. Fair Market Value

The Relator's conclusory claim that Mobilex bills its services below fair market value cannot stand where Relator does not allege what the applicable fair market value is. In the complaint, Relator simply states, without support, that Mobilex provided portable x-ray services below market value. Relator fails to allege: (1) what the fair market value was for mobile x-ray services during any time at issue in the complaint; (2) the amount charged by Mobilex during that same time; or (3) the difference between the two. Failing to allege what fair market value was and what was charged or paid for services is fatal to a claim under AKS and STARK. Complaints that omit this basic element are ripe for dismissal. *See United States ex rel. Woods. v. N. Ark. Reg'l Med. Ctr.*, No. 03-3086, 2006 WL 2583662 (W.D. Ark. September 7, 2006) (dismissing *qui tam* action where relator failed to plead facts regarding the fair market value of goods and services or the actual price charged by defendant); s*ee also United States v. Ctr for Diagnostic Imaging*, *Inc.*, No. C05-0058RSL, 2011 WL 1304727 (W.D. Wash. April 4, 2011) (opining, in part, that without alleging fair market value of services plaintiff failed to sufficiently allege that discounted services constituted remuneration). Relator's conclusory allegation is unsupported by any facts, any market surveys, and contemporaneous analysis. He

cannot simply use the words "below fair market value" in conclusory fashion and have that be the case.

The allegations as set forth in Relator's complaint completely fail to put Mobilex on notice of the allegations against it. In addition to excluding the relevant fair market value and the amount at which Mobilex charged SNFs below fair market value, Relator also fails to assert *when* Mobilex allegedly charged for services below fair market value. Relator also does not allege *who* – that is, the facility or facilities – Mobilex provided services below fair market value. Based on the allegations as pled, Mobilex is completely unable to form an accurate and informed response to this allegation.

### b. Medicare Fee Schedule

Relator also alleges that Mobilex billed for its x-ray services at a rate that was below the MFS. In support of this allegation, Relator merely provides the amount that the MFS allowed in Ohio in 2006 and 2009.[2] Compl. ¶70. Relator, however, provides no context for this allegation. Relator does not compare the MFS allowable rate in 2006 and 2009 to rates provided by Mobilex during this time. In fact, Relator does not make a single allegation regarding the flat fees Mobilex charged in 2006 or 2009 for single-view chest x-rays in Ohio, or anywhere else in the nation.

In addition, courts have found that the MFS does not equate to fair market value of services reimbursed under Medicare. *See Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 630-31 (N.D. Ill 2006) (finding that during the time period set forth in relator's claim, "the Medicare allowable rate was not necessarily or even typically based

---

[2] Relator specifically alleges that in 2006 the Medicare Fee Schedule "in Ohio allowed $145.25 for a single-view chest x-ray, including set-up fee, transportation fee, and technical cost. By 2009, the Medicare Fee Schedule in Ohio, allowed $162.40 for a single view chest x-ray, including set-up fee, transportation fee, and technical cost." Compl. ¶70.

upon 'fair market value' for ambulance services").  Relator, yet again, provides only naked assertions and blank conclusions regarding what is allowable under Medicare, without tying any such facts to Mobilex's conduct.  Relator fails to place Mobilex on notice of the allegations against it as required under Fed.R.Civ.P. 8.

### c. Actual Costs

Relator also alleges that in 2001, "Mobilex's actual cost to perform a portable x-ray averaged approximately $96.62.  For Medicare Part A patients, Mobilex's *per diem* rate ranged from $0.45 to $1.00 per patient day and the flat fees ranged from $50.00 to $75.00 per exam." Compl. ¶69.  As an initial matter, Mobilex's cost for performing x-rays differs by region, by facility, and by applicable time period.  Costs can even vary daily depending upon routing. Relator does not state what region or for what SNF Mobilex incurred this approximate cost of $96.62 – he simply makes an unsupported allegation.  To imply that Mobilex incurred the same costs for all SNFs in all regions at all times is an unfounded (and inaccurate) conclusion – indeed, Relator cannot even allege that these costs were Mobilex's costs throughout the country.  The Relator states no grounds for which this conclusion rests, and therefore, this claim must be dismissed pursuant to Rule 12(b)(6).

As to the *per diem* rate, there is no way for Mobilex to determine whether it charged above or below its costs based solely upon review of the Relator's allegations because Relator does not assert how many x-rays were being performed per patient in 2001. For instance, if Mobilex charged a *per diem* fee of $1.00 per patient, a SNF would pay approximately $365.00 per year, per patient.  If Mobilex only performed one x-ray on that patient for that year, it is clear that the fee received by Mobilex from the SNF

would exceed Mobilex's actual costs. In this instance, Relator's claim fails by simple mathematics.

Tellingly, Relator alleges that in 2006 Mobilex averaged 1.5 x-rays per Part A patient stay. Compl. ¶76. Even assuming this number is comparable to the number of x-rays performed in 2001, Mobilex would have charged in excess of its costs under the *per diem* scheme. Even at a $0.45 *per diem* rate, a SNF would pay $164.25 a year, per patient. If a patient received 1.5 x-rays, Mobilex's cost would be $144.93 for that patient. Relator's allegation that Mobilex provides x-rays at rates below its actual costs can easily be refuted by piecing together the paragraphs in Relator's own disjointed complaint. And disjointed it is – taking supposed, unsupported "costs" allegedly from one region in 2001 and comparing them to another unsupported number from 2006 and then extrapolating a "conclusion" across all regions and all time periods. The facts alleged by the Relator are not sufficient to establish the facial plausibility of the claims alleged. As the Supreme Court explained in *Iqbal*, 129 S.Ct. at 1949:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*See also Bell v. Fairbanks Capital Corp.*, 2008 U.S. Dist. LEXIS 90828 (S.D. Ohio, E.D.) (Watson, J.) (citing *Bishop v. Lucent Tecs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (in turn quoting *Twombly*, 127 S.Ct. 1965, 1974) ("to survive a motion to dismiss, the

factual allegations of a complaint must 'state a claim for relief that is plausible on its face.'").  Here, Relator's allegations make no sense and fail to state a claim for which relief can be granted.

### B. RELATOR'S COMPLAINT SHOULD BE DISMISSED UNDER FED.R.CIV.P. 9(b).

#### 1. Relator's complaint does not meet requirements of 9(b)

This Court should dismiss the complaint because Relator has failed to plead allegations of fraud with particularity as required under Fed. R. Civ. P. 9(b).  In order to survive a motion to dismiss a complaint for fraud, a relator must allege, at a minimum, specifics to '"the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"  *United States ex rel. Bledsoe v. Cmty Health Sys., Inc.* ("Bledsoe *II*")*,* 501 F.3d 493, 506 (6th Cir. 2007) (quoting *Bledsoe v. Cmty Health Sys., Inc.* ("Bledsoe *I* ")*,* 342 F.3d 634. 643 (6th Cir. 2003)).  It is well established in the Sixth Circuit that  "pleading an actual false claim with particularity is an indispensible element of a complaint that alleges a FCA violation in compliance with Rule 9(b)." *Id.* at 504.

A complaint may be dismissed under Rule 9(b) if it contains "no specific information about the filing of the claims themselves-nothing, that is, to alert the defendants to the precise misconduct with which they are charged and [to] protect [ ] defendants against spurious charges of immoral and fraudulent behavior." *Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873, 877 (6th Cir. 2006) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002).  In essence, a complaint must '"provide fair notice to Defendants and enable them to 'prepare an

informed pleading responsive to the specific allegations of fraud.'" *United States. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F3d 496, 504 (6th Cir. 2008) (quoting *Bledsoe II*, 501 F.3d at 504). As shown below, in the instant case Relator's complaint does not comply with the stringent pleading requirements of Rule (9)(b), nor does the complaint adequately put Mobilex on notice of the allegations against it.

### 2. Swapping scheme with SNFs is not pled with particularity to meet the requirements under Rule 9(b).

One of the bedrock principles articulated by the Sixth Circuit is that specific examples of false claims must be pled with particularity when alleging a fraudulent scheme under the FCA. *Bledsoe II*, 501 F.3d 493. Relator has ignored this well-established tenet and has failed to allege any particular facts of a single claim presented to the Government for payment. This failure alone provides unequivocal grounds for dismissal of Relator's complaint.

In the *Bledsoe* decisions, the Sixth Circuit precisely analyzed what is required to establish an FCA claim pursuant to the requirements of Rule 9(b). *See Bledsoe I,* 342 F.3d 634; *Bledsoe II,* 501 F.3d 493. In *Bledsoe* the relator brought a *qui tam* action against her employer-hospital for violations of the FCA regarding illegal upcoding and other billing irregularities. In *Bledsoe I*, the court dismissed the relator's first amended complaint and second amended complaint because they failed to meet the pleading requirements of Rule (9)(b). These complaints did not allege an actual false claim with particularity.

The *Bledsoe II* court stated that '"the fraudulent claim is 'the *sine qua non* of a False Claims Act violation'" and is an indispensible element of the claim. 501 F.3d at. 504 (quoting *Sanderson,* 447 F.3d at 878). This court explicitly rejected the notion that

pleading a *false scheme* with particularity is enough and, instead, imposed a higher requirement that relators identify *specific false claims* with particularity. *Id.* The court went further to explain that specific examples provided by relators must be representative samples of the broader class of claims. *Id.* Finally, the examples of false claims "pled with specificity should, in all material respects, including general time frame, substantive content, and relation to the allegedly fraudulent scheme, be such that a materially similar set of claims could have been produced with a reasonable probability by a random draw from the total pool of all claims." *Id.* at 511. Like the relator in *Bledsoe,* McDonough has failed to identify any specific false claim with particularity.

As an initial matter, Relator does not even identify a year or range of years when a specific claim was made to the Government. It appears that, based upon the complaint, Relator could be alleging improper conduct on the part of Mobilex anytime between 1998 and the present.[3] This is insufficient to survive a motion to dismiss under Rule 9(b). *Id. see SNAPP,* 532 F.3d at 506 (determining that relator's allegation that fraudulent activity occurred "'[f]rom 1991 through at least 2001'" was devoid of specifics required to identify a specific representative claim for payment").

Relator also alleges that Mobilex knowingly submits false claims for Part B services and implies that Mobilex causes SNFs to submit inflated annual cost reports. Compl. ¶¶ 31-34, 57. As they stand, these allegations are not enough to identify a specific claim for the purposes of Rule 9(b). In *Bledsoe II,* the relator alleged that defendants inflated cost reports submitted to Medicare. As to one claim, the court ruled that the fundamental flaw was that the relator did "not provide any specific information

---

[3] Relator alleges that Mobilex began providing below cost services to SNFs after the introduction of the prospective payment system (PPS), which began in July of 1998. *See* Compl. ¶¶ 30 & 67.

- 13 -

about the cost reports allegedly submitted. Absent any information as to when the reports were filed, or for how much they were inflated, Relator has failed to set forth a specific FCA violation." 501 F.3d at 512-13; *see also Sanderson*, 447 F.3d at 879 (dismissing relator's claim that hospitals violated FCA by submitting fraudulent hospital cost reports where relator's complaint did not refer to a specific fraudulent cost report or other claim filed with the Government).

Moreover, to the extent Relator asserts that the schedule submitted as Exhibit 1 to his complaint identifies specific representative samples of claims, he is wrong.  This chart shows nothing more than claim information for Part A professional services at certain facilities, which was allegedly gathered by Apex Radiology.[4]  This information was not provided by Mobilex; it was created by Apex and does not purport to be a representative sample of specific claims submitted by Mobilex.  In fact, Relator alleges that Mobilex did not even collect the data depicted in this chart. Compl. ¶106.  *See SNAPP,* 532 F.3d 499 (concluding that providing approximate values of contracts awarded to Ford by the Government did not constitute a sufficient assertion of representative claims for the purposes of Rule 9(b)).

Lastly, Relator generally asserts that "upon information and belief, every SNF Part A patient who received a portable x-ray performed by Mobilex received a service related to an illegal swapping arrangement." Compl. ¶105. This blanket allegation, absent any substantiation, does not meet the requirements of Rule 9(b). "'While fraud may be pled on information and belief when the facts relating to the alleged fraud are peculiarly

---

[4] Apex Radiology, as alleged by Relator, is a teleradiology company that worked with Mobilex from 2002 to 2007.  Billing for portable x-rays consists of two components – the professional component and the technical component.  The Amended Complaint alleges that Apex is responsible for billing the professional component.  *See* Compl.  ¶¶ 100-102.

within the perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief.'" *Bledsoe II,* 501 F.3d at 512. Relator fails to provide any information upon which his general belief is based, as required by law. *See id.* Rule 9(b) requires a relator to do more than merely charge that the defendants are engaged in fraudulent schemes that are "'pervasive and wide-reaching in scope and then 'argue[ ] that the defendants must have submitted fraudulent claims to the government.'" *Sanderson,* 447 F.3d at 878.

Because McDonough fails to allege fraud against Mobilex with particularity and because he fails to allege the specifics of even a single claim with particularity, his claim must fail.

### C. RETALIATION CLAIM SHOULD BE DISMISSED

In order to establish a claim for retaliatory discharge, under the FCA, a relator "must show: (1) he engaged in a protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (citing *McKenzie v. BellSouth Telecomms., Inc.,* 219 F.3d 508, 513-14 (6th Cir. 2000)). In order to succeed on an action for retaliation under the FCA, McDonough has the burden of demonstrating that he put Mobilex on notice that he was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government. *See id; see also Bishop v. Lucent Techns., Inc.,* 520 F.3d 516, 519 (6th Cir. 2008) (stating that a "complaint must contain . . . allegations respecting all material elements [of an action] to sustain a recovery under some viable legal theory.").

In the complaint, Relator makes a single bare-bones statement that he asked Mobliex CEO, William Glynn, to "stop offering discounted PPS Part A rates, or to fight the nationwide abuse of the PPS system by exposing the fraud." Compl. ¶27(d).[5]  Even assuming the alleged statement was made (which Mobilex will contest), merely warning the defendants of the consequences of their conduct is not enough to put a defendant on notice that the relator is furthering an FCA investigation or action.  *See generally United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1523 (10th Cir. 1996).

In addition, it is well-established that a complaint for retaliation should be dismissed where the complaints made by a relator can be considered a part of the relator's job description.  *Yuhasz,* 341 F.3d 559; *Ramseyer,* 90 F.3d at 1523.  In this case, Relator alleged that, among other things, he was responsible for providing assistance to Mobilex CEO, William Glynn. Compl. ¶116.  As part of his duties in assisting and working closely with the CEO of the company, it is likely that Relator would be expected to offer advice and input as a part of his position.  Therefore, the claim of retaliation must be dismissed.

IV. **CONCLUSION**

Because Relator has failed to state a claim upon which relief can be granted and has failed to plead fraud with particularity his complaint should be dismissed in its entirety.

This 22nd day of July, 2011.

---

[5] This paragraph appears to be inadvertently mis-numbered as it is found between paragraphs 86 and 87.

LEGAL02/32720714v2

Respectfully submitted,

/s/ Robert G. Cohen
Robert G. Cohen (0041707)
Email: rcohen@keglerbrown.com
Kegler, Brown, Hill & Ritter, L.P.A.
65 E. State Street, Suite 1800
Columbus, OH 43215
(614) 462-5492 Direct dial telephone
(614) 464-2634 Facsimile

William H. Jordan (*admitted pro hac*)
Email: bill.jordan@alston.com
Wade Pearson Miller (*admitted pro hac*)
Email: wade.miller@alston.com
Alston + Bird LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-4971
Phone: 404-881-7000
Fax: 404-881-7777

*Counsel for Defendants Symphony Diagnostic Services, Inc. and Symphony Diagnostic Services No. 1*

## CERTIFICATE OF SERVICE

I hereby certify that I caused true and correct copies of the foregoing Motion to Dismiss and Memorandum in Support were served this 22nd day of July, 2011, upon all parties via the Court's CM/ECF System and by regular U.S. Mail, postage prepaid if not on the Court's electronic service list.

/s/ Robert G. Cohen
Robert G. Cohen (0041707)

LEGAL02/32720714v2